IN THE MATTER OF: DEBRA TATE, A JUVENILE

No. 8117DC969

(Filed 2 March 1982)

**Infants § 16— juvenile petition—failure of intake counselor to confer with juvenile or guardian**

The trial court erred in failing to dismiss a juvenile petition for failure of the intake counselor to confer with either the juvenile or her guardian before the petition was issued as required by G.S. 7A-532(2).

Judge WEBB dissenting.

APPEAL by the juvenile from *Clark, Judge.* Judgment entered 17 July 1981 in District Court, SURRY County. Heard in the Court of Appeals 11 February 1982.

On 30 June 1981, a juvenile complaint was made by Bill Gwyn against 13-year-old Debra Tate, alleging that she repeatedly telephoned the home of Bill Gwyn, for the purpose of harassing Mr. and Mrs. Bill Gwyn and their son Tommy Gwyn. Linda Chaney, intake counselor for Surry County, approved the petition on 30 June 1981. The trial court found the juvenile delinquent and placed her on probation until her 18th birthday. The juvenile appealed.

Mr. Gwyn's complaint against Debra Tate stems from certain telephone calls made to his home by the juvenile. The State's evidence tended to show that Debra Tate and Tommy Gwyn had dated for several months, but were no longer dating at the time of the phone calls. Mr. Bill Gwyn had told Miss Tate not to call his house, and had placed a tracer on his phone line in June 1981. The juvenile called the Gwyn home approximately four times during the nineteen day period that the tracer was in operation and each time the juvenile just asked to speak to Tommy. The phone call on 29 June 1981 prompted Mr. Gwyn's complaint. The juvenile lives with her grandmother.

*Attorney General Edmisten by Assistant Attorney General W. Dale Talbert for the State.*

*Woltz, Lewis & LaPrade by Thomas W. Anderson for the juvenile-appellant.*

---

---

MARTIN (Robert M.), Judge.

The juvenile-appellant first contends that the trial court erred in failing to dismiss the petition for failure of the intake counselor to confer with either the juvenile or her guardian as required by N.C. Gen. Stat. § 7A-532(2). We agree.

At the time of the delinquency hearing for this juvenile, N.C. Gen. Stat. § 7A-532, part of the new Juvenile Code that went into effect 1 January 1980, read as follows:

> Upon a finding of legal sufficiency, except in the nondivertible offenses set out in G.S. 7A-531, the intake counselor shall determine whether a complaint should be filed as a petition, the juvenile diverted to a community resource, or the case resolved without further action. He shall consider criteria which shall be provided by the Administrator of Juvenile Services in making his decision. The intake process shall include the following steps:
>
> (1) Interviews with the complainant and the victim if someone other than the complainant;
>
> (2) *Interviews with the juvenile, his parent, guardian, or custodian;*
>
> (3) Interviews with persons known to have information about the juvenile or family which information is pertinent to the case.
>
> Interviews required by this section shall be conducted in person unless it is necessary to conduct them by telephone. (Emphasis added.)

Under the Code, certain procedures in screening the petition that were left to the counselor's discretion under the prior Code, became mandatory. The former Code merely instructed the intake counselor to be guided by the "best interests of the juvenile" in gathering evidence and making a decision on whether to file a petition, while the new Code requires the counselor to interview the complainant, the victim, the juvenile, his parents or custodian, and any other person who has information about the case before a petition is issued. Note, Family Law, 58 N.C.L. Rev. 1471 (1980).

In this case, Linda Chaney, the juvenile's intake counselor, testified that she "did not talk to either the juvenile or her grand-

mother [the guardian] before issuing the petition" and that she approved the issuance of the petition after talking with Jack Moore, the juvenile's probation officer. Jack Moore testified that he "did not talk to the respondent or her grandmother on June 29, 1981 or on June 30, 1981, the day the petition was issued." Further, the juvenile's testimony was not sufficient to support a finding that Jack Moore interviewed her before the petition was issued. She testified: "I don't think I talked to Jack Moore or Linda Chaney on June 29, 1981 about the charge . . . . I talked to Jack Moore on the telephone about the charge. It was after the 29th of June. I don't think it was after the 30th of June. I don't know if it was on the 30th of June."

The trial court made no finding of fact about any discussion between the juvenile or her grandmother, and Ms. Chaney or Mr. Moore. Because the evidence in this case could not support a finding that the counselor complied with N.C. Gen. Stat. § 7A-532(2), as it read in June 1981, the trial court erred in finding the juvenile to be delinquent.

Because this assignment of error is determinative of this appeal, we need not consider the juvenile's remaining assignments of error.

Reversed.

Judge WELLS concurs.

Judge WEBB dissents.

Judge WEBB dissenting.

I dissent from the majority because I believe the evidence shows there was substantial compliance with G.S. 7A-532 before the juvenile petition was filed. The evidence shows the juvenile had called the home of Bill Gwyn, the complaining witness, on several occasions before 29 June 1981 and that Mr. Gwyn had told the juvenile to stop calling his home. Jack Moore, a juvenile officer, talked to Mr. Gwyn and the juvenile in regard to the calls. Mr. Moore discussed these conversations with Linda Chaney, the juvenile officer who approved the petition on 30 June 1981. I believe this was substantial compliance with G.S. 7A-532.

I also believe the evidence was sufficient to find the juvenile was delinquent. Mr. Gwyn testified that the juvenile and his son had "dated for approximately four or five months" but were no longer doing so and that they "had some problems and Debbie has had Tommy brought to court." I believe that with this background, the telephone calls to Mr. Gwyn's residence were harassing calls after Mr. Gwyn had told the juvenile to stop calling his residence.