STATE OF NORTH CAROLINA v. STEVE LAWRENCE BERRYMAN, Defendant

No. COA04-560

(Filed 17 May 2005)

**1. Evidence— chain of custody—crack pipe—rocks of crack cocaine—SBI report**

The trial court did not err in a common law robbery and felony possession of cocaine case by allowing into evidence a crack pipe, two rocks of crack cocaine, and a State Bureau of Investigation (SBI) report even though defendant contends the State failed to establish proper chain of custody, because: (1) the arresting officer testified that the crack pipe introduced as evidence at trial was the same pipe he recovered from defendant and that it was in substantially the same condition; (2) the same officer also testified that the rocks of crack cocaine were the same ones that he removed from defendant at the scene, and that they were in substantially the same condition except a small portion of one of the rocks appeared to have been removed; (3) the officer testified that he followed standard procedure for identifying and submitting these two items to the SBI; (4) an SBI agent testified from his review of the report that he could determine that the crack cocaine had been tested following all the proper procedures, that the proper procedures for documenting chain of custody at the lab had been followed, and that the report showed that the substance tested was crack cocaine; and (5) any weak links in the chain of custody pertain only to the weight to be given to the evidence and not to its admissibility.

**2. Robbery— common law robbery—motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the common law robbery charge, because: (1) the evidence taken in the light most favorable to the State shows that defendant took a bottle of beer and a fifth of wine from the convenience store, hid the items in his clothing, and attempted to walk away without paying for them; and (2) in the process of attempting to elude capture from two store employees, defendant pulled a screwdriver and came at one of the employees in a threatening manner and the employee testified that he feared for his safety as a result of defendant's actions.

STATE v. BERRYMAN

[170 N.C. App. 336 (2005)]

## 3. Sentencing— habitual felon—possession of cocaine

The trial court did not err by denying defendant's motion to dismiss the habitual felon charge, because possession of cocaine can be used as a predicate felony.

## 4. Constitutional Law— right to speedy appeal—meaningful and effective appellate review—delay in providing transcript

Defendant's constitutional and statutory rights to meaningful and effective review in a common law robbery and felony possession of cocaine case were not violated by the State's alleged failure to provide a transcript of the proceedings in a timely fashion, because: (1) although a nearly six-year delay in the production of the trial transcript constitutes a sufficient delay to trigger consideration of the other three factors identified as a necessary or sufficient condition to the finding of a deprivation of the right of speedy appeal, its significance in the balance is not great; (2) the record is devoid of any indication as to why the extensive delay took place, and the State has no role in the appeal process until defendant serves the State with the record on appeal; (3) it was not the duty of the State to contact the court reporter or the court concerning the preparation of the transcript since the duty rested exclusively with defendant and his counsel; (4) the record is devoid of any indication that defendant, personally, ever asserted any right to a speedy appeal; (5) the delay in perfecting defendant's appeal has not led to any unwarranted incarceration since defendant's appeal is otherwise without merit; (6) the record is devoid of any evidence that defendant has suffered any anxiety or concern over the delay in his appeal; and (7) defendant has offered no evidence that the delay in production of the transcript has impaired his appeal in any way.

Justice TIMMONS-GOODSON dissenting.

Appeal by defendant from judgment entered 19 February 1998 by Judge Henry V. Barnette, Jr. in Wake County Superior Court. Heard in the Court of Appeals 12 January 2005.

*Attorney General Roy Cooper, by Special Deputy Attorney General Thomas J. Ziko, for the State.*

*The Kelly Law Firm, by George E. Kelly, III, for the defendant.*

STATE v. BERRYMAN

[170 N.C. App. 336 (2005)]

STEELMAN, Judge.

About 10:30 on the night of 30 October 1997 the defendant, Steve Lawrence Berryman, entered a convenience store. Store clerk Salah Yousif (Yousif) became suspicious of defendant and began to monitor his movements in the store. Yousif observed defendant take a bottle of beer and a fifth of wine from the cooler and hide them in his clothing. As defendant started to leave the store, Yousif pressed an alarm to warn Louie Claami (Claami), who was working in the back of the store, that he needed assistance. When Claami appeared, Yousif, speaking in Arabic, told him defendant was stealing some beer and instructed him to stop defendant from leaving the store. As Claami moved to block his exit, defendant rushed through the door. Yousif then leaped over the counter and helped Claami grab the defendant and force him back into the store. Once they had pushed the defendant back into the store, Yousif told him they were calling the police and instructed Claami to restrain the defendant. The defendant then reached into his pocket and pulled out a screwdriver and came at Yousif. At that point, Yousif testified, the issue changed from being about the beer and wine to being about his personal safety, and Yousif punched defendant. The defendant fell but recovered and rushed at Yousif again. Yousif managed to restrain the defendant, and Claami grabbed a baseball bat from behind the counter and came to Yousif's assistance until the police arrived. Once the police had handcuffed defendant, Yousif told them that he had a screwdriver in his pocket. The officers found the screwdriver on the floor of the store, within five feet of where the defendant had been lying. When the officers searched defendant, they found him in possession of two rocks of crack cocaine and a pipe used for smoking crack cocaine.

Defendant testified that on the night of the crime he was at the home of a friend named Edward Sanders when they decided defendant would buy some beer. Defendant put on Sanders' jacket and went to the convenience store. Defendant had two dollars, which was only enough money to purchase one beer. Defendant admitted that when he got to Yousif's store he shoplifted the bottle of beer and the fifth of wine. Defendant testified that, when he realized that Yousif had seen him shoplifting the alcohol, "I think my intentions then was to probably put the beer back." At that moment, he saw Claami coming toward him and Yousif behind the counter with a baseball bat. When he attempted to flee the store Yousif rushed at him and hit him from behind with the baseball bat. Defendant claimed that he threw his hands up and surrendered but that Yousif and Claami started hitting

him with their fists. Defendant fell to the floor. He then jumped up and tried to run from the store but was prevented from doing so by Yousif. According to defendant, the screwdriver in his pocket "came from work that day," he never pulled the screwdriver out of his pocket and the screwdriver was still in his pocket when the police found it.

Defendant claimed that the cocaine and crack pipe were not his, and that he had no idea they were in the coat. Defendant was indicted on charges of robbery with a dangerous weapon in violation of N.C. Gen. Stat. § 14-87(a) and felony possession of cocaine in violation of N.C. Gen. Stat. § 90-95. The jury found defendant guilty of common law robbery and felony possession of cocaine. Following the return of those verdicts, the jury found defendant guilty of being an habitual felon. All charges were consolidated into one judgment and defendant received an active sentence of 133 to 169 months. Defendant appeals.

[1] In defendant's second assignment of error he argues that the trial court erred in allowing into evidence the crack pipe, two rocks of crack cocaine, and a State Bureau of Investigation report because the State failed to establish proper chain of custody. We disagree.

> Before real evidence may be received into evidence, the party offering the evidence must first satisfy a two-pronged test. "The item offered must be identified as being the same object involved in the incident and it must be shown that the object has undergone no material change." Determining the standard of certainty required to show that the item offered is the same as the item involved in the incident and that it is in an unchanged condition lies within the trial court's sound discretion. "A detailed chain of custody need be established only when the evidence offered is not readily identifiable or is susceptible to alteration and there is reason to believe that it may have been altered." Any weak links in the chain of custody pertain only to the weight to be given to the evidence and not to its admissibility.

*State v. Fleming*, 350 N.C. 109, 131, 512 S.E.2d 720, 736 (1999) (internal citations omitted). In the instant case, the arresting officer testified that the crack pipe introduced as evidence at trial was the same pipe he recovered from defendant and that it was in substantially the same condition. He further testified that the rocks of crack cocaine were the same ones that he removed from the defendant at the scene, and that they were in substantially the same condition excepting a

small portion of one of the rocks which appeared to have been removed. Thus proper foundations were laid for the admission of these two items of evidence.

The arresting officer testified that he followed standard procedure for identifying and submitting these two items of evidence to the State Bureau of Investigation laboratory. Special Agent Wagner of the SBI testified at trial and was tendered as an expert in the fields of chemistry, analysis and identification of narcotics, and forensic chemistry, without objection. Special Agent Wagner testified that from his review of the report, he could determine that the crack cocaine had been tested following all the proper procedures, that the proper procedures for documenting chain of custody at the laboratory had been followed, and that the report clearly showed that the substance tested was crack cocaine. "If the evidence is sufficient to reasonably support the conclusion that the substance analyzed is the same as that obtained from defendant, then both the substance and the results of the analysis are admissible." *State v. Callahan*, 77 N.C. App. 164, 168, 334 S.E.2d 424, 427 (1985). As any "weak links in the chain of custody pertain only to the weight to be given to the evidence and not to its admissibility[,]" *Fleming*, 350 N.C. at 131, 512 S.E.2d at 736, the report was properly admitted and any weakness in the chain of custody was for the jury to weigh. This assignment of error is without merit.

**[2]** In defendant's third assignment of error, he argues that the trial court erred in denying his motion to dismiss the robbery with a dangerous weapon charge for insufficiency of the evidence. We disagree.

"In reviewing the denial of a defendant's motion to dismiss, this Court determines only whether the evidence adduced at trial, when taken in the light most favorable to the State, was sufficient to allow a rational juror to find defendant guilty beyond a reasonable doubt on each essential element of the crime charged." *State v. Cooper*, 138 N.C. App. 495, 497, 530 S.E.2d 73, 75, *aff'd per curiam*, 353 N.C. 260, 538 S.E.2d 912 (2000) (citation omitted). "The State is entitled to all inferences that may be fairly derived from the evidence." *Id.* Contradictions and discrepancies must be resolved in favor of the State. *State v. Lucas*, 353 N.C. 568, 581, 548 S.E.2d 712, 721 (2001). "In addition, the defendant's evidence should be disregarded unless it is favorable to the State or does not conflict with the State's evidence." *State v. Fritsch*, 351 N.C. 373, 379, 526 S.E.2d 451, 455 (2000) (citation omitted).

STATE v. BERRYMAN

[170 N.C. App. 336 (2005)]

Defendant was not found guilty of robbery with a dangerous weapon. Defendant was found guilty of common law robbery, and thus we only address the sufficiency of the evidence to support that charge. "Common law robbery is the felonious, non-consensual taking of money or personal property from the person or presence of another by means of violence or fear." *State v. Smith*, 305 N.C. 691, 700, 292 S.E.2d 264, 270 (1982). The evidence at trial, taken in the light most favorable to the State, shows that the defendant took a bottle of beer and a fifth of wine from the convenience store, hid the items in his clothing, and attempted to walk away without paying for them. In the process of attempting to elude capture by Yousif and Claami, defendant pulled a screwdriver and came at Yousif in a threatening manner. Yousif testified that he feared for his safety as a result of defendant's actions. We hold that the evidence was sufficient to go to the jury on the charge of common law robbery. This assignment of error is without merit.

[3] In defendant's fourth assignment of error he argues that the trial court erred in denying his motion to dismiss the habitual felon charge because possession of cocaine is a misdemeanor. We disagree.

Defendant relies on *State v. Jones*, 161 N.C. App. 60, 588 S.E.2d 5 (2003). The relevant holding in that opinion was reversed by *State v. Jones*, 358 N.C. 473, 598 S.E.2d 125 (2004). This assignment of error is without merit.

[4] In defendant's first assignment of error, he argues that "The State's failure to provide a transcript of the proceedings in a timely fashion has deprived [him] of his constitutional and statutory rights to meaningful and effective appellate review." We disagree.

Judgment in this case was entered 19 February 1998. The transcript of these proceedings was not mailed by the court reporter until 2 February 2004, nearly six years after Judgment was entered. In this case, the court reporter should have delivered the transcript within 60 days from the date the clerk of the trial court served the order "upon the person designated to prepare the transcript." N.C. R. App. P. Rule 7(b)(1). The order issued pursuant to Rule 7 was delivered to the court reporter on 20 February 1998, and thus the transcript should have been delivered within 60 days thereafter absent a request for an extension of time. Defendant, through his attorney, first inquired about the transcript on 13 January 1999, then made several additional inquiries through 1 June 2000. Defendant then waited over three years

before again making inquiry on 19 November 2003. Defendant received the completed transcript on 10 February 2004.

This Court recognizes that " 'undue delay in processing an appeal *may* rise to the level of a due process violation.' " *State v. Hammonds*, 141 N.C. App. 152, 164, 541 S.E.2d 166, 175 (2000) (*quoting United States v. Johnson*, 732 F.2d 379, 381 (4th Cir. 1984) (citations omitted) (emphasis in original)). Determination of whether delay in processing an appeal rises to a due process violation is determined by the same factors used to determine whether pre-trial delay amounts to a denial of a defendant's right to a speedy trial under the Sixth Amendment of the United States Constitution. *Id.* Those factors are: "(1) the length of the delay; (2) the reason for the delay; (3) defendant's assertion of his right to a speedy trial; and (4) prejudice to defendant resulting from the delay." *Hammonds*, 141 N.C. App. at 158, 541 S.E.2d at 172 (*citing Barker v. Wingo*, 407 U.S. 514, 33 L. Ed. 2d 101 (1972)). "We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Id.*

### Length of the Delay

"[T]he length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Hammonds*, 141 N.C. App. at 159, 541 S.E.2d at 172. A nearly six year delay in the production of the trial transcript constitutes a sufficient delay to trigger consideration of the other three factors. However: "Because the length of delay is viewed as a triggering mechanism for the speedy trial issue, 'its significance in the balance is not great.' " *Id.* (*citing State v. Hill*, 287 N.C. 207, 211, 214 S.E.2d 67, 71 (1975)). This Court has previously held that standing alone, a seven year delay in a defendant's appeal did not constitute a violation of his due process rights. *State v. China*, 150 N.C. App. 469, 564 S.E.2d 64 (2002).

### Reason for the Delay

"The proscription is against purposeful or oppressive delays and those which the prosecution could have avoided by reasonable effort." *Hammonds*, 141 N.C. App. at 160, 541 S.E.2d at 173, *citing State v. Johnson*, 275 N.C. 264, 273, 167 S.E.2d 274, 280 (1969). " 'The

STATE v. BERRYMAN

[170 N.C. App. 336 (2005)]

burden is on an *accused* who asserts the denial of his right to a speedy trial to show that the delay was due to the neglect or willfulness of the prosecution.' " *Id.*

The record is devoid of any indication as to why the extensive delay took place. The court reporter was ordered by the trial court to prepare the transcript. This order was served on the court reporter on 20 February 1998. Defendant's attorney made several inquiries as to the status of the transcript over the following years, and it was finally received on 10 February 2004. Though defendant argues in his brief that "[t]hroughout this time, the State is aware of the situation and makes no effort to obtain the transcript . . ." there is absolutely nothing in the record to support this claim. The order for preparation of the transcript was entered by the trial court. The State has no role in the appeal process until defendant serves the State with the record on appeal. N.C. R. App. P. Rule 11. It was not the duty of the State to contact the court reporter or the court concerning the preparation of the transcript. This duty rested exclusively with the defendant and his counsel, as it is defendant's "duty and responsibility to see that the record is in proper form and complete. Rule 9(b)(3)(v) and (vii)" *State v. Alston*, 307 N.C. 321, 341, 298 S.E.2d 631, 644 (1983). We are "unable to find that the delay is attributable to the prosecution." *Hammonds*, 141 N.C. App. at 164, 541 S.E.2d at 176.

## Defendant's Assertion of His Right to a Speedy Appeal

The record is devoid of any indication that defendant, personally, ever asserted any right to a speedy appeal. According to the affidavit of defendant's attorney, he made several inquiries in the first two years following the appeal, then there is a period of nearly three years during which no inquiries were made. Defendant's attorney finally re-initiated contact with the court reporter on 19 November 2003 and received the transcript about three months later.

> Defendant could have contacted his attorney, the trial court, or the Clerk of this Court to determine the status of his appeal at any time between the time he gave notice of appeal and filed a petition for a writ of *certiorari* with our Court. In the speedy trial context, our Supreme Court has stated: "defendant's failure to assert his right to a speedy trial sooner in the process does not foreclose his speedy trial claim, *but does weigh against his contention that he has been denied his constitutional right to a speedy trial.*"

*China,* 150 N.C. App. at 474, 564 S.E.2d at 68 (citations omitted). Defendant's attorney, working on his behalf, should have sought an order from the trial court compelling the court reporter to produce the transcript in a timely manner. Defendant's failure to assert his right to a speedy appeal weighs against his contention that this right has been violated.

### Prejudice

There are three recognized interests protected by a speedy appeal: 1) prevention of oppressive incarceration; 2) minimization of anxiety and concern of the defendant; and 3) limiting the possibility that the defense will be impaired. *See China,* 150 N.C. App. at 475, 564 S.E.2d at 69; *United States v. Johnson,* 732 F.2d 379, 382 (4th Cir., 1984). First, because we have held that defendant's appeal is otherwise without merit, the delay in perfecting his appeal has not led to any unwarranted incarceration. Second, defendant argues in his brief that he has "felt increased anxiety and an increased sense of hopelessness and loss of faith in our judicial system." However, the record is devoid of any evidence that defendant has suffered any anxiety or concern over the delay in his appeal. "Defendant has failed to show that he suffered any more anxiety than any other appellant." *China,* 150 N.C. App. at 475, 564 S.E.2d at 69. Finally, defendant has offered no evidence that the delay in production of the transcript has impaired his appeal in any way.

Although the delay of nearly six years in producing the trial transcript is inexcusable, after carefully weighing the four *Barker* factors we find no deprivation of defendant's due process rights.

NO ERROR.

Judge HUDSON concurs.

Judge TIMMONS-GOODSON dissents.

TIMMONS-GOODSON, Judge, dissenting.

Although I believe that the majority applies the correct caselaw to the facts of the instant case, because I reach a different conclusion, I dissent.

As the majority correctly notes, none of the factors identified by our courts is dispositive of the issue of whether the delay in process-

ing a defendant's appeal rises to a due process violation. *State v. Hammonds*, 141 N.C. App. 152, 158, 541 S.E.2d 166, 172 (2000), *aff'd per curiam*, 354 N.C. 353, 554 S.E.2d 645 (2001), *cert. denied*, 536 U.S. 907, 153 L. Ed. 2d 184 (2002). Instead, the factors should be considered together, along with " 'such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process.' " *Id.* (quoting *Barker v. Wingo*, 407 U.S. 514, 533, 33 L. Ed. 2d 101, 118 (1972)).

In the instant case, the majority opinion describes the delay of defendant's appeal as "inexcusable," a description I find fitting considering the circumstances of the case. As detailed by the majority, due to the court reporter's inability to deliver a proper transcript to him, defendant was unable to properly appeal his conviction until six years after judgment was entered. In fact, at the time defendant eventually received the transcript, he had been imprisoned for six years—more than half the minimum amount of his sentence. During the delay, defendant's appellate counsel made approximately ten inquiries regarding the status of the trial transcript, at one point even hand-delivering a request to the court reporter's mailbox. I question whether an imprisoned defendant could or should be required to do more.

I note that where a pre-trial delay is challenged on appeal, a showing of a "particularly lengthy delay" establishes a *prima facie* case that the delay was caused by the neglect or willfulness of the prosecution. *State v. Chaplin*, 122 N.C. App. 659, 663, 471 S.E.2d 653, 655 (1996). In the instant case, I recognize that the delay was not due to the fault of the prosecutor. Nevertheless, I believe that where a six-year delay is accompanied by approximately ten status-requests by the appellant, at the very least the inability of the court reporter to comply with those requests should be characterized as neglectful. Therefore, I conclude that the length of the delay and the disregard of defendant's assertions of his right to a speedy appeal produced a due process violation in the instant case. Accordingly, I dissent.