**IN RE T.H.**

[218 N.C. App. 123 (2012)]

IN THE MATTER OF: T.H.

No. COA11-718

(Filed 17 January 2012)

## 1. Juveniles—motion to dismiss petitions—N.C.G.S. § 7B-1702

A *de novo* review revealed that the trial court did not commit prejudicial error by denying a juvenile's motion to dismiss the petitions based on an alleged violation of N.C.G.S. § 7B-1702. The legislature's addition of the words "if practicable" lowered the burden on juvenile court counselors to conduct every interview suggested by the statute to only when additional evidence is needed to evaluate the factors provided by the county department of juvenile justice.

## 2. Appeal and Error—transcript delivered over one year later—no prejudicial error

The trial court did not err by concluding a juvenile was not prejudiced by the court reporter's deliverance of the transcript over a year after the juvenile gave notice of appeal. The delay was not "presumptively prejudicial," appellate defense counsel was partly to blame, the juvenile did not specifically assert his right to a speedy trial, and the juvenile was not particularly prejudiced by the, at most, one year delay.

## 3. Juveniles—simple assault—common law robbery—motion to dismiss—sufficiency of evidence

The trial court did not err by denying a juvenile's motion to dismiss the petitions at the close of all evidence based on the State's alleged failure to prove every element of the offenses of simple assault and common law robbery. The evidence, viewed in the light most favorable to the State, showed the State met its burden.

Appeal by respondent from an adjudication and disposition order entered 26 May 2010 by Judge William A. Marsh, III, in Durham County District Court. Heard in the Court of Appeals 15 November 2011.

*Attorney General Roy Cooper, by Assistant Attorney General LaToya B. Powell, for the State.*

*Peter Wood for juvenile appellant.*

McCULLOUGH, Judge.

**IN RE T.H.**

[218 N.C. App. 123 (2012)]

T.H.[1] ("respondent") appeals the adjudication and disposition for simple assault, in violation of N.C. Gen. Stat. § 14-33(a), and common law robbery, in violation of N.C. Gen. Stat. § 14-87.1, entered by the trial court on 26 May 2010. The trial court entered a Level 2 disposition and placed respondent on probation with multiple conditions.

## I. Background

L.C. is a student at the Durham School of the Arts ("DSA") and on 15 January 2010, he was assaulted and robbed by a group of boys while waiting for his mother after school. L.C. had been attending an after school program at the Reality Center, which closed at 6:00 p.m. L.C. subsequently returned to DSA to wait for his mother where he began kicking a soccer ball with a friend, who was also waiting for a parent. At some point a "tall dude" approached L.C. and his friend, and began passing the ball with them. L.C.'s friend then left when his father arrived and L.C. began listening to his iPod.

Not long after L.C.'s friend left, the "tall dude" approached L.C. and asked him what grade he was in. The "tall dude" had four or five friends with him, who L.C. did not know, but had seen come from the Reality Center. According to L.C., the "tall dude" asked a few more questions and then winked at a "little dude." The "little dude" gradually moved behind L.C. and suddenly wrapped his arm around L.C.'s neck, pulling him to the ground. All the other boys rushed in and began patting L.C. down, trying to steal his possessions. He was able to get up, but the "tall dude" took his backpack and iPod. They all then ran off.

Following the incident, L.C. continued to wait for his mother when Laura Crissman, L.C.'s former teacher, passed him while walking to her car. She noticed L.C. was the only student left and asked if he needed a ride. She saw that he was visibly upset and asked what happened. He recounted what happened and asked for a ride. As Ms. Crissman drove him home, she asked if she could tell Officer Terry Mikels, an officer with the Durham Police Department ("DPD"), about the incident. Officer Mikels works part-time at DSA as part of the Gang Resistance Education and Training unit.

The next day L.C. told Officer Mikels what happened, which was that one boy had pulled him down while the others robbed him. Officer Mikels discussed the incident with DSA's Assistant Principal,

---

1. All juveniles will be referred to by initials throughout this opinion to protect their identities.

Michael L. Ferguson, who had already talked to L.C. L.C. told Mr. Ferguson that he thought the "short dude" that pulled him down was a sixth grader at DSA, so Mr. Ferguson took L.C. to a few classes to see if he could identify anyone. L.C. could not find the "short dude" in the classes, so Mr. Ferguson showed him a yearbook. L.C. picked M.B. out of the yearbook. M.B. had been suspended from school on the day of the incident.

Officer Mikels then talked to an administrator at the Reality Center who told him that a group of boys had left soon after L.C. on the evening of the incident. The administrator also told Officer Mikels that students are required to sign in and out of the Reality Center. By reviewing records Officer Mikels was able to determine that M.B. and respondent were at the center, and that evening respondent left one minute before L.C. Officer Mikels talked to M.B. at his house, but M.B. denied any involvement. Officer Mikels tried to talk to respondent at what he believed to be his house, but he was not home. He did briefly speak to respondent's grandmother, with whom respondent formerly lived. On 19 February 2010, Officer Mikels asked L.C. to write a statement about the incident. L.C. asked his teacher to help him because he was not good with spelling. Officer Mikels then turned the investigation over to the Youth Division of the DPD.

On 24 March 2010, Investigator Danny Glover of the DPD, administered a photographic lineup to L.C. in Mr. Ferguson's office. He showed L.C. a series of six yearbook photos and for each separate picture asked him, "Is this the person you saw rob you, yes or no[?]" Investigator Glover conducted the photo lineup twice and both times L.C. positively identified photograph number three. Photograph number three was a picture of respondent. L.C. stated that he was eighty-five percent sure the person in photo number three robbed him. He later testified in court that he was ninety-five percent sure respondent was one of the boys who robbed him. M.B. testified at trial that he, his brother, respondent, and a 16-year-old were around when the incident occurred, but that the 16-year-old was the only one who robbed L.C. However, M.B. did admit to being the shortest and smallest boy in the group.

On 14 December 2009, the trial court charged respondent, by juvenile petition, with larceny and misdemeanor possession of stolen goods for taking two hats from Citi Trend, Inc., in Durham. The trial court dismissed the possession of stolen goods charge and adjudicated respondent delinquent for misdemeanor larceny. The court then entered a Level 1 disposition and placed respondent on six

**IN RE T.H.**

[218 N.C. App. 123 (2012)]

months' probation. On 15 February 2010, respondent was charged by juvenile petition with shoplifting earrings and a watch from Macy's, Inc. Respondent admitted to the shoplifting pursuant to a Juvenile Transcript of Admission. The trial court again adjudicated respondent delinquent, but the record does not include a disposition order relating to this crime.

Finally, on 26 February 2010, Tonya Griffis, the juvenile court counselor ("JCC") for the Durham County Department of Juvenile Justice, received a complaint alleging common law robbery and simple assault against respondent. After talking to the complaining officer, Ms. Griffis approved the petition for filing due to the seriousness of the offenses and respondent's recent juvenile court history. Ms. Griffis did not investigate the complaint and did not speak with respondent or L.C. On 30 March 2010, respondent's counsel filed a motion to dismiss the charges, arguing a violation of N.C. Gen. Stat. § 7B-1702. The trial court subsequently denied the motion following a *voir dire* hearing. The State began a probable cause hearing for the common law robbery charge, but concluded the hearing was unnecessary due to respondent and his co-respondent being only 12 years old. The adjudication hearing was continued until 26 May 2010. The trial court then adjudicated respondent delinquent for simple assault and common law robbery and entered a Level 2 disposition. The trial court placed respondent on probation with multiple conditions. On 4 June 2010, respondent gave written notice of appeal from the 26 May 2010 disposition and adjudication. The record on appeal was finally filed on 13 June 2011.

## II. Analysis

### A. Interpretation of N.C. Gen. Stat. § 7B-1702

**[1]** Respondent first argues the trial court committed prejudicial error by violating N.C. Gen. Stat. § 7B-1702 (2009), in denying respondent's motion to dismiss the juvenile petitions. Specifically, respondent claims Ms. Griffis failed to properly investigate the complaint against respondent before filing the petition and therefore allegedly violated the statute. We do not agree.

"As this is a question of statutory interpretation, we review this argument *de novo.*" *High Rock Lake Partners, LLC v. N.C. Dep't of Transp.*, ___ N.C. App. ___, ___, 693 S.E.2d 361, 368 (2010), *disc. review denied*, 364 N.C. 325, 700 S.E.2d 753 (2010).

Legislative intent controls the meaning of a statute; and in ascertaining this intent, a court must consider the act as a whole, weighing the language of the statute, its spirit, and that which the statute seeks to accomplish. The statute's words should be given their natural and ordinary meaning unless the context requires them to be construed differently.

*Shelton v. Morehead Memorial Hospital*, 318 N.C. 76, 81-82, 347 S.E.2d 824, 828 (1986) (citations omitted).

The statute at issue, N.C. Gen. Stat. § 7B-1702, provides:

Upon a finding of legal sufficiency, except in cases involving nondivertible offenses set out in G.S. 7B-1701, the juvenile court counselor shall determine whether a complaint should be filed as a petition, the juvenile diverted pursuant to G.S. 7B-1706, or the case resolved without further action. In making the decision, the counselor shall consider criteria provided by the Department. The intake process shall include the following steps if practicable:

(1) Interviews with the complainant and the victim if someone other than the complainant;

(2) Interviews with the juvenile and the juvenile's parent, guardian, or custodian;

(3) Interviews with persons known to have relevant information about the juvenile or the juvenile's family.

Interviews required by this section shall be conducted in person unless it is necessary to conduct them by telephone.

*Id.*

Article 17 of the Juvenile Code sets forth procedures for the screening of complaints regarding allegedly delinquent juveniles. *See* N.C. Gen. Stat. § 7B-1700, *et seq.* (2009). The procedure starts with the JCC's determination of whether or not a "juvenile is within the jurisdiction of the court as a delinquent or undisciplined juvenile." N.C. Gen. Stat. § 7B-1701 (2009). Then the JCC must decide whether or not "legal sufficiency" has been established and if the "matters alleged are frivolous." *Id.* Following a finding of legal sufficiency, the JCC must evaluate the complaint pursuant to N.C. Gen. Stat. § 7B-1702, as provided above, and determine whether to file it as a petition. It is not the JCC's duty to "engage in field investigations to substantiate complaints[.]" N.C. Gen. Stat. § 7B-1700. The evidence clearly supports

Ms. Griffis' finding of legal sufficiency and jurisdiction to support the complaint. Officer Mikels provided evidence in the form of L.C.'s written statement and photographic lineup identifications to satisfy the elements for the charges of simple assault and common law robbery. *See* N.C. Gen. Stat. §§ 14-33(a), -87.1 (2009).

The issue then turns to whether Ms. Griffis properly evaluated the complaint prior to filing a petition against respondent. The JCC must decide whether a legally sufficient complaint should be filed as a petition or resolved in another manner and in doing so must consider the criteria as provided by the Department of Juvenile Justice and Delinquency Prevention ("DJJDP"):

> (b) Intake evaluation—In order to determine whether a complaint shall be filed as a petition, the juvenile court counselor in the best interest of the juvenile shall consider the following factors:
>
> (1) Protection of the community;
>
> (2) The seriousness of the offense;
>
> (3) The juvenile's previous record of involvement in the legal system including previous diversions;
>
> (4) The ability of the juvenile and the juvenile's family to use community resources;
>
> (5) Consideration of the victim;
>
> (6) The juvenile's age; and
>
> (7) The juvenile's culpability in the alleged complaint.

28 N.C.A.C. 04A.0102(b) (2003); *see* N.C. Gen. Stat. § 7B-1702.

Respondent argues Ms. Griffis violated N.C. Gen. Stat. § 7B-1702, by filing the petition after only speaking to the complaining officer and not L.C. or respondent. However, the State claims Ms. Griffis' filing of the petition based on the seriousness of.the crimes and respondent's recent juvenile court history did not violate the statute as there was no need to speak to either L.C. or respondent due to the evidence provided by the complaining officer.

Respondent further contends all intake procedures are mandatory and the trial court errs if it does not

follow[] the statutory process for handling complaints of undisciplined behavior, under the Juvenile Code. This process would include the: screening of complaints by a court counselor, G.S. § 7A-530 (1995), preliminary inquiry regarding jurisdiction, divertability, and legal sufficiency, G.S. § 7A-531 (1995), evaluation by intake counselor considering diversion to a community resource, G.S. § 7A-532, 533, 289.6(1) (1995), referral, follow-up and request for review by prosecutor, G.S. § 7A-534, 535, filing of petition, G.S. § 7A-560, 561, 563 (1995) and ultimate adjudication and disposition by the juvenile court, G.S. § 7A-629, 640 (1995).

*Taylor v. Robinson*, 131 N.C. App. 337, 342, 508 S.E.2d 289, 293 (1998). He acknowledges that there is little case law interpreting N.C. Gen. Stat. § 7B-1702; however, he notes the case of *In re Tate*, 56 N.C. App. 241, 287 S.E.2d 416 (1982), which involves the statute's previous version, N.C. Gen. Stat. § 7A-532(2) (repealed 1998). There, our Court held the intake screening procedures were mandatory and substantial compliance with the statute was not sufficient. *Tate*, 56 N.C. App. at 241, 287 S.E.2d at 416. As a result, respondent would prefer that we interpret the procedures of N.C. Gen. Stat. § 7B-1702 to be mandatory for JCCs.

The legislature added some key language in 1998 when it repealed N.C. Gen. Stat. § 7A-532(2) and revised N.C. Gen. Stat. § 7B-1702. The added language makes respondent's reliance on Tate misplaced because the new words changed the semantics of the statute. The legislature merely added the words "if practicable" in revising the statute, but these two words add new meaning to the statute. *See* N.C. Gen. Stat. § 7B-1702. The words refer to when the intake counselor shall follow the listed procedures of the intake process. Respondent claims the meaning of "if practicable" is unambiguous and clearly means "unless impossible" in the context of the new statute. We do believe the words "if practicable" are unambiguous in the context of the statute, but that respondent is misinterpreting it in this situation. " 'When the language of a statute is clear and unambiguous, there is not room for judicial construction and the courts must give the statute its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein.' " *State v. Carr*, 145 N.C. App. 335, 343, 549 S.E.2d 897, 902 (2001) (quoting *State v. Jarman*, 140 N.C. App. 198, 205, 535 S.E.2d 875, 880 (2000).

The main purpose of N.C. Gen. Stat. § 7B-1702 is for the JCC to evaluate the factors as provided by the DJJDP and determine whether the filing of a petition is necessary. *See* N.C. Gen. Stat. § 7B-1702. The

statute merely provides methods by which the JCC can obtain information to evaluate the DJJDP factors, but the methods shall only be used "if practicable." *See id.* The legislature clearly added the words "if practicable" to the statute to alleviate an onerous burden once imposed on JCCs. It can be tedious for a JCC to have to contact numerous people to obtain information regarding a complaint, and we believe the legislature's intent in adding the words "if practicable" was to give the JCC more flexibility in how it conducts its intake process and evaluates the complaints.

Here, Officer Mikels had already obtained a statement from L.C. and Investigator Glover had conducted a photographic lineup with L.C. There would be no need for Ms. Griffis to contact L.C. further. Ms. Griffis thoroughly considered the seriousness of the offense, the fact that there was a victim of an assault, and respondent's history in the juvenile system, which she readily obtained from the documentation accompanying the complaint. From the evidence it appears that interviews with L.C. or respondent would be unnecessary, and we believe this is one of the situations the legislature envisioned when adding the words "if practicable" to the statute. Nonetheless, Ms. Griffis did conduct one brief interview when she talked over the phone with Shirley Ann Herron, respondents' great aunt with whom he was currently living and who was already aware of the charges against respondent. Also, Officer Mikels had briefly talked to respondent's grandmother about the incident.

Consequently, we believe the legislature's addition of the words "if practicable" lowered the burden on JCCs to conduct every interview suggested by the statute to only when additional evidence is needed to evaluate the factors provided by DJJDP. Thus, the trial court did not err in denying respondent's pre-trial motion to dismiss because the JCC complied with the requirements of N.C. Gen. Stat. § 7B-1702.

B. Delay in Delivery of Transcript

**[2]** Respondent next claims he was prejudiced by the court reporter's deliverance of the transcript from the 30 March 2010 hearing on 11 April 2011, over a year after respondent gave notice of appeal. For reasons discussed herein, we disagree.

Respondent's argument can be interpreted as a claim that the delay in producing the trial transcript was a violation of "his constitutional and statutory rights to meaningful and effective appellate

review." *State v. Berryman*, 170 N.C. App. 336, 341, 612 S.E.2d 672, 676 (2005), *aff'd*, 360 N.C. 209, 624 S.E.2d 350 (2006).

This Court recognizes that " 'undue delay in processing an appeal *may* rise to the level of a due process violation.' " *State v. Hammonds*, 141 N.C. App. 152, 164, 541 S.E.2d 166, 175 (2000) (*quoting United States v. Johnson*, 732 F.2d 379, 381 (4th Cir. 1984) (citations omitted) (emphasis in original)). Determination of whether delay in processing an appeal rises to a due process violation is determined by the same factors used to determine whether pre-trial delay amounts to a denial of a defendant's right to a speedy trial under the Sixth Amendment of the United States Constitution. *Id.* Those factors are: "(1) the length of the delay; (2) the reason for the delay; (3) defendant's assertion of his right to a speedy trial; and (4) prejudice to defendant resulting from the delay." *Hammonds*, 141 N.C. App. at 158, 541 S.E.2d at 172 (*citing Barker v. Wingo*, 407 U.S. 514, 33 L. Ed. 2d 101 (1972)). "We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Id.*

. . . .

"[T]he length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Hammonds*, 141 N.C. App. at 159, 541 S.E.2d at 172.

*Id.* at 342, 612 S.E.2d at 676.

In the case at bar, the delay in producing the transcript could not be considered more than a year and could certainly be considered less. "Because the length of delay is viewed as a triggering mechanism for the speedy trial issue, its significance in the balance is not great." *Id.* at 342, 612 S.E.2d at 676 (internal quotation marks and citations omitted). While the significance of the length of delay is not great, we do not consider a delay of a year to be "presumptively prejudicial" to trigger an inquiry into the other factors. Nevertheless, we would like to briefly note the circumstances in the case at hand and our reasoning for any future, similar situations. *See State v. Berryman*, 360 N.C. 209, 220-23, 624 S.E.2d 350, 358-60 (2006) (six-year delay was inexcusable, but not in violation of defendant's due process rights); *State v. China*,

150 N.C. App. 469, 474-75, 564 S.E.2d 64, 68-69 (2002) (seven-year delay, standing alone, did not violate defendant's due process rights).

The record contains two appellate entries forms, one filed 17 March 2010 and the other filed 14 June 2010. The 17 March 2010 form lists the hearing date as the same day it was filed while the 14 June 2010 form lists the hearing date as 26 May 2010. In addition, the 14 June 2010 form contains a written notation, initialed by the trial court, adding the 30 March 2010 hearing to the dates to be transcribed. It is unclear when this notation was added, but the record contains an email chain between the court reporter and appellate defense counsel with an email dated 22 November 2010 where appellate defense counsel asks the court reporter if "the clerk sent [him] an amended appellate entries form yet for the transcription of the 3/30 hearing?" The rest of the email chain shows some confusion between the two, but we can infer from the emails that the court reporter did not know about the required transcription of the 30 March 2010 hearing date until sometime in November. It can also be inferred that appellate defense counsel is partially at fault for a portion of the delay for not asking the court reporter about the missing transcript until November. Therefore, the delay in the case at hand is not "presumptively prejudicial," appellate defense counsel is partly to blame, respondent did not specifically assert his right to a speedy trial, and respondent has not been particularly prejudiced by the at most one year delay. As such, the delay in the case at hand did not deprive respondent of his due process rights.

C. Respondent's Motion to Dismiss

[3] Respondent's final argument on appeal is that the trial court erred in denying his motion to dismiss the petitions at the close of all evidence because the State failed to prove every element of the offenses of simple assault and common law robbery. We disagree.

In reviewing the denial of a motion to dismiss a juvenile petition, our Court must "determine whether, in the light most favorable to the State, there was substantial evidence supporting each element of the charged offense." *In re I.R.T.*, 184 N.C. App. 579, 588, 647 S.E.2d 129, 136 (2007). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted).

The crime of simple assault consists of "an overt act or an attempt, or the unequivocal appearance of an attempt, with force and violence,

**IN RE T.H.**

[218 N.C. App. 123 (2012)]

to do some immediate physical injury to the person of another, which show of force or menace of violence must be sufficient to put a person of reasonable firmness in fear of immediate bodily harm." *State v. Jeffries*, 57 N.C. App. 416, 418, 291 S.E.2d 859, 860-61 (1982). For the crime of common law robbery, the State must prove " 'the felonious, non-consensual taking of money or personal property from the person or presence of another by means of violence or fear.' " *State v. Elkins*, ___ N.C. App. ___, ___, 707 S.E.2d 744, 748 (2011) (quoting *State v. Smith*, 305 N.C. 691, 700, 292 S.E.2d 264, 270 (1982)).

The evidence, viewed in the light most favorable to the State, tends to show the State met its burden in proving respondent committed the crimes of simple assault and common law robbery against L.C. The State presented evidence that L.C. was robbed of his iPod and backpack by a group of boys while waiting for his mother after school at the DPA. L.C. twice identified respondent in photographic lineups as one of his assaulters. He further testified at trial to remembering respondent patting him down and M.B. testified to respondent having walked behind L.C. Furthermore, L.C. testified and wrote a statement giving a vivid description of the incident in which the boys confronted L.C., M.B. walked behind L.C. and pulled him down, and then the rest of the boys, including respondent, "rushed in and beat [L.C.] up and robbed [him]." Consequently, the evidence meets the elements of simple assault and common law robbery. Moreover, the evidence shows respondent joined the group of boys in assaulting and robbing L.C. *See State v. Begley*, 72 N.C. App. 37, 323 S.E.2d 56 (1984) (holding three defendants guilty under acting in concert principle). Thus, the trial court did not err in denying respondent's motion to dismiss.

### III. Conclusion

Based on the foregoing, the trial court did not err in denying respondent's pretrial motion to dismiss because the JCC complied with the requisite statute in filing the juvenile complaint. Also, respondent was not prejudiced by the delay in delivery of the trial transcript and the trial court did not err in denying respondent's motion to dismiss at the end of all evidence.

Affirmed.

Judges McGEE and STEELMAN concur.