STATE OF NORTH CAROLINA v. BENJAMIN FRANKLIN CHINA

No. COA01-667

(Filed 4 June 2002)

## 1. Constitutional Law— right to a speedy trial—delay in processing appeal

A defendant's right to a speedy trial was not violated in a second-degree burglary case even though there was almost a seven-year delay in processing review of his conviction, because: (1) there is no constitutional right to an appeal under the United States Constitution for a convicted criminal, and the right is purely statutory; (2) the record fails to indicate that defendant asserted his right to a speedy appeal prior to 14 June 2000, and defendant contributed to the delay by failing to assert earlier his right to a speedy appeal; (3) although defendant contends he suffered a greater degree of anxiety over the outcome of his appeal compared to a typical appellant, defendant failed to support his claim; and (4) although defendant contends he was prejudiced since the passage of time has prevented him from obtaining a certified transcript of his trial, defendant has failed to show that the unsigned transcript provided in the record is inaccurate.

## 2. Evidence— photographs—jewelry

The trial court did not commit plain error in a second-degree burglary case by allowing the State to introduce into evidence photographs of the victim's stolen jewelry that she wore into court during the trial on the grounds that the State failed to disclose to defendant its intention to enter the items into evidence at trial and failed to properly preserve the tangible evidence seized and released to the victim at the crime scene because: (1) even assuming there was error in admitting the photographs into evidence, defendant has failed to show any prejudice when the victims and an officer could have testified about the jewelry regardless of whether the photographs were admitted into evidence; (2) defendant was provided a full opportunity to examine the jewelry prior to its admission into evidence, to object to the trial court's recommended procedure, or to cross-examine any witness about the jewelry; and (3) defendant has failed to show that but for the admission of these photographs, a different result probably would have occurred or that he was denied a fair trial by the admission of the evidence.

**3. Evidence— cross-examination—statement defendant was a thief**

The trial court did not commit plain error in a second-degree burglary case by failing to intervene ex mero motu during defendant's cross-examination of one of the victims who stated that defendant was a thief and that the victim knew defendant had to be involved, because: (1) an officer identified defendant as the perpetrator, the victim's jewelry was found in defendant's apartment, defendant's arm was bleeding profusely immediately after the burglary, and blood was found on the broken glass at the victims' house; and (2) even if improper character evidence was admitted, defendant has not shown that a different result was probable if the trial court had stricken the testimony.

**4. Constitutional Law— effective assistance of counsel—failure to move to suppress evidence**

A defendant did not receive ineffective assistance of counsel in a second-degree burglary case based on defense counsel's failure to move to suppress evidence obtained during a warrantless search of defendant's apartment, because: (1) the warrantless entry into defendant's residence did not violate defendant's Fourth Amendment rights since the officer could have reasonably believed that someone in the house was in need of immediate assistance based on the violent screaming emanating from inside the apartment as he approached the front door along with the two victims; and (2) once inside the apartment, the officer's seizure of the victim's jewelry in plain view was lawful.

Appeal by defendant from judgment entered 28 April 1994 by Judge Anthony M. Brannon in Durham County Superior Court. Heard in the Court of Appeals 28 March 2002.

*Attorney General Roy Cooper, by Assistant Attorney General John P. Scherer, II, for the State.*

*Daniel Shatz for defendant-appellant.*

TYSON, Judge.

Benjamin Franklin China ("defendant") appeals from judgment entered after a jury verdict found him guilty of second-degree burglary. We find no prejudicial error.

STATE v. CHINA

[150 N.C. App. 469 (2002)]

## I. Facts

The evidence at trial tended to show that on the evening of 15 January 1994 at approximately 10:00 p.m. Jonetta Dixon ("Jonetta") and her husband Lacy Billings ("Lacy") were visited by Lacy's daughter Diane China ("Diane") in their home. Diane is married to defendant. Diane borrowed $20.00 in cash from Lacy during their visit. Diane testified that she did not have a good relationship with Lacy.

Jonetta and Lacy informed Diane that they were going to spend the night at Jonetta's sister's house and that they would not return that evening. Jonetta and Lacy left their house at approximately 11:30 p.m. shortly after Diane left to go to her home. Jonetta and Lacy locked all of the doors and windows.

Officer M.D. Barenson ("Officer Barenson") was working in the vicinity of Jonetta's and Lacy's home when he received a call advising a burglary was in progress. Officer Barenson drove to Jonetta's and Lacy's house and parked in front. Officer Barenson exited his vehicle, approached the front door, determined that it was locked, and proceeded toward the side of the building. He discovered broken glass and a water cooler propped up against the wall directly under a shattered window. Officer Barenson radioed his sergeant to confirm the burglary, and his sergeant dispatched assistance. The sergeant and other officers were located nearby conducting a murder investigation.

Officer Barenson cautiously proceeded to the back of the building. He observed a black male, five-foot-six to five-foot-eight inches tall and approximately 145 pounds, later identified as defendant, descending the back stairs carrying numerous items in his arms. Defendant and Officer Barenson locked eyes momentarily. Defendant sprinted around the other side of the building, and dropped the items he was carrying. Defendant unknowingly ran past the murder scene where Officer Barenson's sergeant and other officers were conducting the unrelated murder investigation. Barenson's sergeant saw defendant running. Officer Barenson radioed his sergeant, who tried to secure the area with the other officers. The officers unsuccessfully conducted a search for defendant.

After the search, Officer Barenson and another officer returned to the burglarized house. While examining the residence, Jonetta and Lacy returned home at approximately 12:30 a.m. Officer Barenson

informed them of the burglary. Lacy responded that he suspected his son-in-law might be involved. Jonetta and Lacy escorted Officer Barenson to Diane's house. As they approached, they heard a violent argument emanating from inside the apartment. Officer Barenson knocked on the door, it opened, and they walked inside. Diane was sitting in the living room with a knife in her hand, and defendant walked out of the kitchen bleeding profusely from his forearm.

Officer Barenson immediately recognized defendant as the person he had seen descending the back stairs an hour earlier. Jonetta testified that Officer Barenson stated "this is the one . . . that is him." Officer Barenson testified that "I looked right at him and I said that is him. That is the man." Defendant was wearing pants that looked identical to the pants that Officer Barenson saw the burglar wearing. Defendant was placed under arrest.

Jonetta stood by Officer Barenson's side and observed the arrest. She also noticed and immediately recognized her jewelry scattered on top of the kitchen table and on top of the coffee table in the living room. Jonetta remembered seeing her jewelry on top of her bedroom dresser earlier that evening prior to leaving her house. The jewelry included necklaces, rings, bracelets, and watches. Unprompted, Diane fervently denied breaking into her father's house.

After a complete identification of the jewelry by Jonetta, Officer Barenson returned Jonetta's jewelry to her pursuant to his sergeant's orders. Defendant was transported downtown to jail. Jonetta and Lacy returned home and noticed that her jewelry had, in fact, been stolen. One window was entirely shattered. Jonetta discovered blood stains on the curtains that surrounded the broken window. Lacy observed blood on the broken window glass.

Defendant was tried on 24 April 1994. Defendant did not testify, but offered the testimony of his wife at trial. The jury found defendant guilty of second-degree burglary. The trial court sentenced defendant to twenty years. Defendant appealed in open court. The trial court appointed defendant's trial counsel to represent him on appeal. Defendant's appointed counsel did not perfect the appeal.

Approximately six years later on 9 June 2000, defendant petitioned our Court for a writ of certiorari. Our Court granted defendant's petition and remanded the case to Durham County Superior Court for the appointment of substitute appellate counsel. New counsel was appointed on 11 December 2000. Defendant obtained the nec-

essary extensions for filing the record and the briefs. The case is properly before us.

## II. Issues

Defendant assigns the following errors: (1) the delay in affording defendant an appeal violated his statutory and constitutional rights to a "speedy appeal," (2) the trial court erred by overruling defendant's objection and admitting photographic evidence at trial, (3) the trial court erred by failing to stop a State's witness from improperly attacking defendant's character, and (4) defendant had ineffective assistance of counsel.

## III. Appeal Delay

[1] Defendant contends that his due process rights and law of the land rights to a speedy trial were violated. He argues that the almost seven year delay in processing review of his conviction was unconscionable.

There is no constitutional right to an appeal under the United States Constitution for a convicted criminal. *Goeke v. Branch*, 514 U.S. 115, 119, 131 L. Ed. 2d 152, 158 (1995) (citing *Ortega-Rodriguez v. United States*, 507 U.S. 234, 253, 122 L. Ed. 2d 581, 600 (1993) (Rehnquist, C.J., dissenting)). The right to appeal in a criminal proceeding is purely statutory. *State v. Shoff*, 118 N.C. App. 724, 725, 456 S.E.2d 875, 876 (1996); N.C. Gen. Stat. § 15A-1444 (2001) ("A defendant who has entered a plea of not guilty to a criminal charge, and who has been found guilty of a crime, is entitled to appeal as a matter of right when final judgment has been entered.)

In *State v. Hammonds*, 141 N.C. App. 152, 164, 541 S.E.2d 166, 175 (2000) this Court stated that " 'undue delay in processing an appeal *may* rise to the level of a due process violation.' " (quoting *United States v. Johnson*, 732 F.2d 379, 381 (4th Cir. 1984) (emphasis in original)). We must analyze the factors set forth in *Barker v. Wingo*, 407 U.S. 514, 33 L. Ed. 2d 101 (1972), to determine if there was a due process violation caused by a delay in processing an appeal. *See Hammonds*, 141 N.C. App. at 164, 541 S.E.2d at 175. The four factors are: (1) the length of the delay; (2) the reason for the delay; (3) defendant's assertion of his right to a speedy appeal; and (4) any prejudice to defendant. *Id.* at 158, 541 S.E.2d at 172 (citing *Barker*, 407 U.S. at 530, 33 L. Ed. 2d at 116-17). No one factor is dispositive; the four "are related factors and must be considered together with such other circumstances as may be relevant." *Id.*

## A. Length and Reason for the Delay.

An approximately seven year delay in processing defendant's appeal is lengthy and sufficient to examine the remaining factors. We are troubled by the reason for the delay in this case. Defendant argues that "[t]he reason for most of the delay in this case is the failure of the defendant's court-appointed attorney to perfect the appeal." In the State's response to defendant's petition for writ of *certiorari*, it posits that defendant's appointed trial counsel did not know that he was appointed as defendant's appellate counsel. Defendant claims that the colloquy at the end of the trial between the judge and defendant's trial counsel clearly shows that defendant's trial counsel knew and understood that he was appointed as defendant's appellate counsel. The trial transcript supports defendant's position.

None of the delay was attributable to any affirmative act by defendant. "[W]e are equally unable to find that the delay is attributable to the prosecution." *Id.* at 164, 541 S.E.2d at 176. From the record before us, we cannot and do not determine why defendant's appeal was not perfected.

## B. Defendant's Assertion of His Right to a Speedy Appeal

The record fails to indicate that defendant asserted his right to a speedy appeal prior to 14 June 2000. On that date defendant petitioned this Court *pro se* for a writ of *certiorari* and requested that we order the Durham County Superior Court to review defendant's judgment. Defendant contributed to the delay by failing to assert earlier his right to a speedy appeal.

Defendant could have contacted his attorney, the trial court, or the Clerk of this Court to determine the status of his appeal at any time between the time he gave notice of appeal and filed a petition for a writ of *certiorari* with our Court. In the speedy trial context, our Supreme Court has stated: "[d]efendant's failure to assert his right to a speedy trial sooner in the process does not foreclose his speedy trial claim, *but does weigh against his contention that he has been denied his constitutional right to a speedy trial.*" *State v. Flowers*, 347 N.C. 1, 28, 489 S.E.2d 391, 407 (1997) (citing *State v. Webster*, 337 N.C. 674, 680, 447 S.E.2d 349, 352 (1994) (emphasis supplied)).

Here, defendant's silence is deafening. Defendant's failure to stay informed concerning the status of his appeal of right and to assert his

rights weighs heavily against his contention that his due process rights were violated.

## C. Prejudice

In the trial context, our Supreme Court and the United States Supreme Court have recognized three interests protected by a speedy trial: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Flowers*, 347 N.C. at 28, 489 S.E.2d at 407 (citing *Webster*, 337 N.C. at 681, 447 S.E.2d at 352) (quoting *Barker*, 407 U.S. at 532, 33 L. Ed. 2d at 118)).

Concerning the first two interests, defendant contends that he suffered a greater degree of anxiety over the outcome of his appeal than the typical appellant. Defendant argues that he was abandoned by his attorney, and that he did not have anyone zealously represent-ing his interests. If defendant was unaware that appellate counsel was, in fact, not representing him, then he logically could not have suffered any more anxiety than the average appellant. If he was aware that he did not have appellant counsel, any anxiety he pur-portedly suffered could have been alleviated by acting on his con-cerns at any time. Once defendant acted, this Court granted his requested relief. Defendant has failed to show that he suffered any more anxiety than any other appellant.

Concerning the third interest, defendant claims that "the passage of time has prevented [him] from obtaining a certified transcript of his trial, since the Court Reporter has moved to Nicaragua." Defendant also contends that it is impossible for his counsel to deter-mine if any error occurred during those periods because the trial transcript does not contain the selection of the jury or trial counsel's closing arguments. The record contains an unsigned copy of the trial transcript. Defendant presented no evidence to suggest that the unsigned transcript is inaccurate. After balancing the four factors set out above, defendant's failure to assert his right to a speedy appeal combined with the lack of prejudice suffered by defendant shows that although his delay in processing his appeal was approximately seven years, defendant suffered no depravation of due process. We hold that defendant's delay in asserting his statutory right of appeal did not violate his due process rights.

## IV.  Evidence at Trial

**[2]** Defendant contends the trial court erred by allowing the State to introduce into evidence photographs of Jonetta's jewelry that she wore into court during the trial. Defendant claims the State failed to disclose to defendant its intention to enter the items into evidence during the trial, and that the State failed to properly preserve the tangible evidence seized and then released at the crime scene. Defendant contends that the trial court's failure to sanction the State for these violations was an abuse of discretion. We disagree.

### A.  Discovery Disclosure

N.C.G.S § 15A-903(d) controls the disclosure of documentary and tangible evidence by the State to the defendant, and requires the prosecutor, upon request by defendant, to disclose all tangible evidence to be used against defendant at trial. N.C. Gen. Stat. § 15A-903(d) (2001). The record shows that the State did not intend to introduce the jewelry or photographs into evidence at trial.

The trial transcript also shows that defendant failed to object to the admission into evidence of Jonetta's jewelry. Defendant has alleged plain error. "This Court has recognized that '[t]he plain error rule applies only in truly exceptional cases.' " *State v. Anderson,* 355 N.C. 136, 142, 558 S.E.2d 87, 92 (2002) (quoting *State v. Walker,* 316 N.C. 33, 39, 340 S.E.2d 80, 83 (1986)). "[A] defendant relying on the rule bears the heavy 'burden of showing . . . (i) that a different result probably would have been reached but for the error or (ii) that the error was so fundamental as to result in a miscarriage of justice or denial of a fair trial.' " *Id.* (quoting *State v. Bishop,* 346 N.C. 365, 385, 488 S.E.2d 769, 779 (1997)).

The admission of the evidence occurred when the State was questioning Jonetta on direct examination. Defendant's counsel peremptorily objected that the State was about to broach the subject of the jewelry Jonetta was wearing. The trial court removed the jury and considered defendant's objections. The trial court discovered that Jonetta was wearing some of the jewelry that was stolen and returned to her the night of the burglary. The trial court suggested that the items be examined thoroughly by both sides and be photographed. Defendant (1) did not object to the suggested procedure, (2) indicated his complete satisfaction with the procedure, and (3) was allotted time to completely examine all of the jewelry. Hearing no

objections or complaints from defendant or his counsel, the trial court resumed the trial. The State continued its examination of Jonetta. The State admitted the photographs of the jewelry into evidence. Defendant never cross-examined Jonetta's or any other witness' recollection of the jewelry.

Assuming error in admitting the photographs into evidence, defendant has failed to show, and we are unable to find, any prejudice to defendant. Jonetta, Lacy, and Officer Barenson could have testified about the jewelry regardless of whether the photographs were admitted into evidence. This assignment of error is overruled.

## B. Preservation

Defendant contends that the officer's failure to keep records of the jewelry seized from and returned to Jonetta constituted a statutory violation and substantially impeded defendant's ability to defend against the charges. Defendant argues that "[b]y releasing the property without any documentation of ownership, the offer created a situation where the prosecuting witness might have manufactured the strongest evidence against [defendant], in furtherance of a pre-existing grudge." Defendant also argues that "[b]y placing [Jonetta] in a position where she was able to wear the evidence into court and spring it upon the defendant without warning, the State substantially impeded the defendant's ability to challenge the most critical evidence against him."

Defendant failed to object when the photographs were admitted as evidence and asserts plain error. We disagree. For the same reasons stated above, defendant was provided a full opportunity to examine the jewelry prior to its admission into evidence, object to the trial court's recommended procedure, or cross-examine any witness about the jewelry. Defendant has not shown that but for the admission of these photographs a different result probably would have occurred or that he was denied a fair trial by the admission of the evidence. Defendant has failed to show prejudice. This assignment of error is overruled.

## V. Trial Court's Failure to Intervene

[3] On cross-examination by defense counsel, Lacy testified that "I know [defendant] is a thief and I feel like there was some connection between those two [defendant and Diane] with what happened to the house . . . . I said it had to be one or the other but after [Officer Barenson] described who it was I was definite that he was the one

because I know his past life." Immediately after Lacy's comments, defense counsel attempted to impeach Lacy's credibility.

Defendant argues that it was plain error for the trial court not to intervene *ex mero motu*. Defendant's counsel elicited the testimony during cross-examination. Defendant's counsel continued to question Lacy about the comment and about defendant's description. Defense counsel did not object to Lacy's response, nor move to strike Lacy's comments as not responsive.

Officer Barenson identified defendant as the perpetrator, Jonetta's jewelry was found in defendant's apartment, defendant's arm was bleeding profusely immediately after the burglary, and blood was found on the broken glass at Jonetta's and Lacy's house. Even if improper character evidence was admitted, defendant has not shown that a different result was probable if the trial court had stricken the testimony. This assignment of error is overruled.

## VI.  Ineffective Assistance of Counsel

[4] In his final assignment of error, defendant contends that when Officer Barenson entered defendant's house without a search or arrest warrant his Fourth Amendment rights were violated. Defendant argues that his counsel did not move to suppress the evidence obtained at defendant's apartment. Defendant claims that this failure constituted ineffective assistance of counsel. We disagree.

"To successfully assert an ineffective assistance of counsel claim, defendant must satisfy a two-prong test." *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693 (1984). "First, he must show that counsel's performance fell below an objective standard of reasonableness." *State v. Gainey*, 355 N.C. 73, 112, 558 S.E.2d 463, 488 (2002) (citation omitted). "Second, once defendant satisfies the first prong, he must show that the error committed was so serious that a reasonable probability exists that the trial result would have been different." *Id.*

There is a presumption that trial counsel acted in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694. "In analyzing the reasonableness under the performance prong, the material inquiry is whether the actions were reasonable considering the totality of the circumstances at the time of performance." *Gainey*, 355 N.C. at 112, 558 S.E.2d at 488 (citation

omitted). "Reviewing courts should avoid the temptation to second-guess the actions of trial counsel, and judicial review of counsel's performance must be highly deferential." *Id.*

Officer Barenson's warrantless entry into defendant's residence did not violate defendant's Fourth Amendment rights. The evidence shows that Officer Barenson, Lacy and Jonetta arrived at the front door, heard a violent argument in the apartment, knocked on the door which opened, and walked inside. Officers may enter a house for emergency purposes without a warrant when they believe a person in the house is in need of immediate aid or assistance in order to avoid serous injury. *State v. Woods*, 136 N.C. App. 386, 391-92, 524 S.E.2d 363, 366 (2000); *see also Mincey v. Arizona*, 437 U.S. 385, 57 L. Ed. 2d 290 (1978).

Officer Barenson could have reasonably believed that someone in the house was in need of immediate assistance based on the violent screaming emanating from inside of the apartment as he, Lacy and Jonetta approached the front door. Once inside, Officer Barenson's beliefs were justified. Diane was holding a knife, and defendant was bleeding excessively from his arm. Defendant and Diane did not protest Officer Barenson's, Lacy's, or Jonetta's entry. Counsel's actions in not moving to suppress the evidence were reasonable.

Once inside, Officer Barenson's seizure of the jewelry in plain view was lawful. *State v. Worsley*, 336 N.C. 268, 282, 443 S.E.2d 68, 75 (1994) (bloody bed-sheet was admissible since it was within the plain view of the officers while they were lawfully on the premises); *State v. Allison*, 298 N.C. 135, 140, 257 S.E.2d 417, 420 (1979) ("The seizure of suspicious items in plain view inside a dwelling is lawful if the officer possesses legal authority to be on the premises.") (citations omitted).

Defendant has failed to meet the first prong of the ineffective assistance of counsel test. Because defendant has failed to satisfy the first prong, we need not address the second prong. *See Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693. This assignment of error is overruled.

## VII. Summary

We have carefully examined all of defendant's argued assignments of error. Those assignments of error not argued are deemed

abandoned. N.C.R. App. P. 28(b)(5) (2001). We hold that defendant received a trial free from prejudicial errors that he assigned.

No error.

Judges MARTIN and THOMAS concur.