IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-894

Filed 21 May 2025

Jackson County, Nos. 20CRS000218; 20CRS000219; 20CRS000220; 20CRS000221; 20CRS000222; 20CRS000223; 22CRS000097

STATE OF NORTH CAROLINA

v.

JOHNATHON MICAH MANEY, Defendant.

Appeal by Defendant from judgments entered 23 August 2022 by Judge William H. Coward in Jackson County Superior Court. Heard in the Court of Appeals 22 April 2025.

*Attorney General Jeff Jackson, by Assistant Attorney General Kristin Cook McCrary, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Kathryn L. VandenBerg, for Defendant.*

GRIFFIN, Judge.

Defendant Johnathon Micah Maney appeals from judgments entered upon jury verdicts finding him guilty of numerous sexual offenses against a child. Defendant contends he is entitled to a new trial because: (1) the trial court plainly erred in admitting improper evidence under Rule 404(b) of the North Carolina Rules of Evidence; (2) the State made improper prejudicial statements throughout his trial; and (3) the trial court failed to sign documents requisite to this appeal in a timely manner. We disagree and hold Defendant received a fair trial, free from error and

prejudice.

## I.    Factual and Procedural Background

This case arises from Defendant's repeated sexual abuse of his minor daughter, Rebecca.[1]  Evidence presented at trial tended to show the following:

Rebecca was born in 2004.  Her mother was absent from her life and, because of Defendant's inability to maintain a stable lifestyle, she moved in with her paternal grandparents and her aunt at age four.  Growing up, she maintained a relationship with her father by visiting him whenever he had a place to live.  Defendant sexually abused her during these visits.  Rebecca was young when the abuse began— Defendant forced her to watch sexually explicit videos involving fathers and daughters.  As she got older, Defendant's abuse towards her and others in their family escalated.

In 2013, Defendant met Sarinna Parish, a missionary at their church.  The two married in the summer of 2014 and moved into her parent's trailer in Jackson County.  Their marriage began normally, but things changed when Sarinna became pregnant. Defendant began pressuring Sarinna to abort their child and, when she refused out of her moral and religious convictions, he became violent.  Defendant began physically abusing Sarinna, sexually assaulting her, threatening to kill her if she left him, and pointing loaded firearms at her and their child's head.  Defendant

---

[1] We use a pseudonym to protect the identity of the minor child and for ease of reading.  N.C. R. App. P. 42(b).

would also frequently stay out until late at night and return home with hypodermic needles in his pockets, which Sarinna found when doing their laundry.

Shortly after Sarinna gave birth to their child in 2015, she and Defendant moved into their own trailer near her parents. During this period, Defendant's behavior became more erratic and paranoid. Friends of Defendant would often come back to the trailer after long nights out and stay there for extended periods of time. He painted the walls of their trailer colors he called "Joker Purple" and "Joker Green" in reference to the villain from Batman. Frequently, he would pace around their apartment carrying a loaded AR-15 because he feared he was being watched by the "Mexican Mafia." At one point, Defendant hung blackout curtains over the windows to prevent the mafia from watching them. Defendant also nailed boards over the trailer's doorframes and confined Sarinna to their bedroom whenever she was not attending school or making him meals.

While living in this trailer, Defendant began raping Sarinna. He would force her into sexual acts by threatening to make her watch him kill their child before killing her. In the winter of 2015, while Rebecca was visiting at Sarinna's parents' trailer, Defendant sexually assaulted her and Sarinna together. Sarinna failed to report the assault because of Defendant's continuous threats to hurt her, her child, and Rebecca. Eventually, in 2019, Sarinna escaped the trailer with the help of the Department of Social Services.

Rebecca, however, continued to suffer from Defendant's abuse. She developed

depression and anxiety, began harming herself, and started having panic attacks. During her freshman year of high school, while in gym class, Rebecca had a panic attack prompting her to disclose Defendant's abusive behaviors to her teacher, after which she discussed the abuse with her principal as well. Her school conveyed the report to law enforcement, resulting in further interviews at the Heart-to-Heart Child Advocacy Center and with medical examiners. Law enforcement also interviewed Sarinna in South Carolina to corroborate Rebecca's account.

On 18 June 2020, a Jackson County grand jury indicted Defendant on: (1) two counts of statutory rape of a child by an adult; (2) four counts of statutory sex offense; and (3) seven counts of taking indecent liberties with a minor. Prior to trial, Defendant filed a motion in limine seeking to exclude portions of Sarinna's testimony. Defendant's matter came on for trial on 15 August 2022 in Jackson County Superior Court. Following trial, on 23 August 2022, the jury returned verdicts finding Defendant guilty on: (1) one count of statutory rape of a child; (2) two counts of statutory sex offense with a child; and (3) four counts of taking indecent liberties with a child.

After being convicted, Defendant filed a notice of appeal and an affidavit of indigency. The trial judge failed to sign Defendant's appellate entries. On 20 March 2024, the Senior Resident Superior Court Judge for Jackson County entered an order finding that the trial judge refused to sign the entries and signing them himself—initiating Defendant's appeal.

## II. Analysis

Defendant argues the trial court plainly erred in admitting Rule 404(b) evidence. Defendant also contends the trial court committed reversible error by failing to intervene *ex mero motu* when the State made multiple statements about "walking in Rebecca's shoes." Finally, Defendant alleges his right to a speedy appeal was violated by the trial court's nineteen-month delay in signing forms necessary for this appeal. We discern no error in allowing the 404(b) evidence, no prejudice caused by the trial court's failure to intervene in the State's remarks, and no violation of Defendant's rights to a speedy appeal.

### A. 404(b) Evidence

Defendant asserts the trial court plainly erred by allowing Rule 404(b) evidence at trial. Specifically, Defendant argues his ex-wife's testimony about his acts: (1) urging her to abort her pregnancy; (2) threatening to physically harm, and even kill her, if she tried to leave; (3) holding a knife and gun to her head; (4) throwing a sword at her; (5) raping her; (6) holding a gun to their baby's head; (7) staying out and allowing others to live in their trailer; (8) acting paranoid; and (9) boarding up and locking her within their trailer bedroom was inadmissible.

Defendant contends these acts were irrelevant and unfairly prejudicial because they were not similar to the crimes he was on trial for. Defendant concedes he failed to preserve this issue for appeal.

### 1. *Plain Error*

A defendant who files a motion in limine to exclude evidence at trial, but fails to object to the testimony during trial, leaves the issue unpreserved for appellate review. *State v. Hayes*, 350 N.C. 79, 80, 511 S.E.2d 302, 303 (1999) (citations omitted). We review an unpreserved issue for plain error. *State v. Lawrence*, 365 N.C. 506, 512, 723 S.E.2d 326, 330 (2012); N.C. R. App. P. 10(a)(4). The plain error rule necessitates a three step analysis:

> First, the defendant must show that a fundamental error occurred at trial. Second, the defendant must show that the error had a "probable impact" on the outcome, meaning that "absent the error the jury probably would have returned a different verdict." Finally, the defendant must show that the error is an "exceptional case" that warrants plain error review, typically by showing that the error seriously affects "the fairness, integrity or public reputation of judicial proceedings."

*State v. Reber*, 386 N.C. 153, 158, 900 S.E.2d 781, 786 (2024) (cleaned up). This is a high standard and "should be applied cautiously and only in the exceptional case" where the error "amounts to a denial of a fundamental right of the accused" resulting "in a miscarriage of justice or the denial of a fair trial." *Id.* (citations and internal marks omitted).

### 2. *Rule 404(b)*

We review a trial court's "legal conclusion that the evidence is, or is not, within the coverage of Rule 404(b)" de novo. *State v. Jones*, 288 N.C. App. 175, 179, 884 S.E.2d 782, 788 (2023) (citation and internal marks omitted). Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the

character of a person in order to show that he acted in conformity therewith." N.C. R. Evid. 404(b) (2023). However, evidence of other crimes, wrongs, or acts is "admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident." *Id.* It is also admissible "if it forms part of the history of the event or serves to enhance the natural development of the facts." *State v. Agee*, 326 N.C. 542, 547–48, 391 S.E.2d 171, 174 (1990) (citations and internal marks omitted). "Rule 404(b) is a general rule of inclusion of relevant evidence[,]" but safeguards exist to ensure the propriety of admitting the evidence. *State v. Gillard*, 386 N.C. 797, 811, 909 S.E.2d 226, 245 (2024) (citations and internal marks omitted). "Specifically, 404(b) evidence is constrained by the requirements of similarity and temporal proximity[,]" *Id.* (citation and internal marks omitted), but our courts "have been 'markedly liberal in admitting evidence of similar sex offenses to show one of the purposes enumerated in Rule 404(b)[,]'" *State v. Houseright*, 220 N.C. App. 495, 498, 725 S.E.2d 445, 447 (2012) (quoting *State v. Thaggard*, 168 N.C. App. 263, 270, 608 S.E.2d 774, 780 (2005)). Acts need not "rise to the level of the unique and bizarre" to be sufficiently similar for purposes of Rule 404(b). *State v. Beckelheimer*, 366 N.C. 127, 131, 726 S.E.2d 156, 159 (2012) (citation and internal marks omitted). Instead, the "[p]rior acts are sufficiently similar if there are some unusual facts present in both crimes that would indicate that the same person committed them." *Id.* (citation and internal marks omitted). Additionally, we focus not on the differences between the two acts

but the similarities. *State v. Pickens*, 385 N.C. 351, 359, 893 S.E.2d 194, 200 (2023) (citing *Beckelheimer*, 366 N.C. at 131–32, 726 S.E.2d at 159–60). Rule 404(b) evidence "is admissible unless the only reason that the evidence is introduced is to show the defendant's propensity for committing a crime like the act charged." *Id.*

In sum, three requirements must be met for the admission of Rule 404(b) evidence. *Jones*, 288 N.C. App. at 181, 884 S.E.2d at 789. "First, relevant evidence of the past acts by a defendant must have probative value beyond showing the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." *Id.* (cleaned up). Next, "the past act must be similar enough to the charged crime to distinguish the acts from any generalized commission of the crime." *Id.* (cleaned up). Finally, "the past act must be temporally proximate to the presently charged act." *Id.* (citation omitted).

Returning to the merits here, admission of Sarinna's testimony was not error; much less does its admission rise to the level of plain error. As a threshold matter, Defendant conceded at trial, and does not contest on appeal, that Sarinna's testimony was temporally proximate to the crimes for which he was charged. Thus, we only address whether Sarinna's testimony of past acts by Defendant had probative value beyond showing Defendant's propensity or disposition to commit the crimes against his daughter for which he was charged and whether those acts were similar enough to the crime charged. *Pickens*, 385 N.C. at 359, 893 S.E.2d at 200.

Despite Defendant's argument, Sarinna's testimony had substantial probative

value, and was similar enough to the crime charged, to be admissible under Rule 404(b). Specifically, Sarinna's testimony was probative of numerous aspects of the State's case because it added context and illustrated Defendant's state of mind when victimizing members of his family.

Sarinna testified that Defendant engaged in a pattern of threatening behaviors, such as using weapons and verbal threats and barricading her inside of their room, to coerce her into sexual acts and remaining silent about him raping both her and Rebecca. Sarinna also testified to Defendant allowing people to stay with them, against her will, and his erratic and paranoid behavior which prompted him to paint their house strange colors, hang blackout curtains over all the windows, and pace around with a loaded gun. This testimony was probative of the context surrounding Sarinna's failure to report the rape she witnessed—she was afraid Defendant would follow through on his past threats of physically harming her, her child, and Rebecca. In the same vein, Sarinna's testimony about Defendant's erratic behavior—painting their trailer walls purple and hanging blackout curtains, allowing people to stay with them despite her protests, finding needles in his pockets, and pacing around their house with a gun because of his fear of the "Mexican Mafia"— helped explain her fear by providing concrete examples of times where he acted violent for no reason and imposed his will on her. *See Agee*, 326 N.C. at 548, 391 S.E.2d at 174 (holding evidence admissible if it "forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the

jury" (citation and internal marks omitted)). Sarinna's testimony about Defendant urging her to obtain an abortion after learning of her pregnancy was similarly probative of Defendant's state of mind when coercing her into taking actions she resisted.

Further, a rational jury could have questioned why Sarinna failed to report the abuse, thereby undermining her testimony about the rape, but the State utilized the challenged testimony to illustrate Defendant's erratic, violent, and threatening behavior to explain Sarinna's failure to report the abuse. This testimony also helped explain why Rebecca did not report her father's abuse earlier. She witnessed acts of violence committed by Defendant towards Sarinna and stated that she did not tell anybody because she was "afraid that [she] would get hurt in some way." Thus, the Rule 404(b) evidence had probative value beyond showing Defendant's propensity or disposition to commit the crimes against his daughter—it provided the context in which Defendant committed the crimes and was integral to the story of why Rebecca did not report her abuse. Moreover, the testimony explained Defendant's erratic state of mind during the time period he was committing the crimes. Simply put, Sarinna's testimony painted the broader picture illustrating the context in which Defendant committed the crimes against his daughter and the aftermath of those crimes.

Next, we must address whether the acts testified to were sufficiently similar to the crimes for which Defendant was on trial. *Jones*, 288 N.C. App. at 181, 884 S.E.2d at 789. To reiterate, the similarities do not need to "rise to the level of unique

- 10 -

and bizarre" and are sufficiently similar "if there are some unusual facts present in both crimes that would indicate that the same person committed them." *Beckelheimer*, 366 N.C. at 131, 726 S.E.2d at 159 (citations and internal marks omitted); *see also Pickens*, 385 N.C. at 359, 893 S.E.2d at 200 ("Our Rule 404(b) standard does not require identical or even near-identical circumstances between the charged offense and the prior bad act for evidence of the prior bad act to be admissible." (citation omitted)).

Defendant relies on this Court's opinion in *State v. Dunston*, 161 N.C. App. 468, 588 S.E.2d 540 (2003), to argue "a defendant's sexual behavior with other adults is not similar under Rule 404(b) to sexual abuse of children." This assertion misapprehends and unduly broadens the scope of the holding in *Dunston*. There, the State elicited testimony of a specific sexual act which the defendant and his wife consensually engaged in. *Id.* at 473, 588 S.E.2d at 545–55. We concluded, however, that the testimony referring to the act "*by itself*" was not sufficiently similar to engaging in the act "with an underage victim beyond characteristics inherent to both, i.e., they both involve [the same sexual act], to be admissible under Rule 404(b)." *Id.* (emphasis added). As explained below, the repeated rapes Defendant committed here on his wife and child share more commonalities than just simply "the characteristics inherent to both" rapes. *Id.*

Here, there are enough similarities between the acts Sarinna testified to and the crimes Defendant committed against his daughter to warrant admission of

Sarinna's testimony. Specifically, the acts testified to by both Sarinna and Rebecca occurred in the trailer, and in the room, that Defendant and Sarinna lived in with Sarinna's parents and in the trailer they moved into after leaving Sarinna's parents' home. Rebecca also remembered the "purpled wall trailer," which Sarinna's testimony helped to explain. *See Beckelheimer*, 366 N.C. at 131, 726 S.E.2d at 159 (holding "the location of the occurrence" to be a key similarity). Both victims were also members of Defendant's family. *See State v. Frazier*, 344 N.C. 611, 616, 476 S.E.2d 297, 300 (1996) ("All of the victims were related to [the] defendant[.]").

Defendant also "exerted control over both victims during the assaults despite their protests [] and resistance." *Pickens*, 385 N.C. at 359, 893 S.E.2d at 200. Rebecca, on one hand, testified that she told him she was in pain during the rape and that she did not like it. She also testified Defendant used force when making her use a sexual device and while attempting to make her perform certain sexual acts. Sarinna, on the other hand, similarly testified Defendant would use force by holding weapons to her head when forcing her into sexual acts. Finally, the acts referred to also included vaginal intercourse with both victims. *See id.* ("[The d]efendant engaged in vaginal intercourse or tried to engage in vaginal intercourse with both victims.").

These similarities support the trial court's finding that the acts were sufficiently similar to be admitted under Rule 404(b). *See Beckelheimer*, 366 N.C. at 131, 726 S.E.2d at 159 ("Prior acts are sufficiently similar if there are some unusual

facts present in both crimes that would indicate that the same person committed them." (citation and internal marks omitted)).  Consequently, admission was also consistent with this State's liberal policy of "'admitting evidence of similar sex offenses by a defendant.'" *Id.* at 130–31, 726 S.E.2d at 159 (quoting *State v. Bagley*, 321 N.C. 201, 207, 362 S.E.2d 244, 247 (1987)).

Even if the Rule 404(b) evidence was not sufficiently similar, it did not prejudice Defendant to the extent necessary to show plain error because there was additional, overwhelming evidence of Defendant's guilt.  *See Reber*, 386 N.C. at 158–59, 900 S.E.2d at 786–87 ("[A] defendant must establish prejudice—that, after examination of the entire record, the error had a *probable impact* on the jury's finding that the defendant was guilty." (quoting *Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334) (internal marks omitted)). The jury heard testimony from Rebecca describing the sexual assaults and Defendant forcing her to watch explicit, adult materials in gross detail.  Sarinna also provided non-404(b) testimony about witnessing one of the rapes.  Rebecca herself provided Rule 404(b) evidence, which Defendant does not contest, of a different time Defendant sexually assaulted her while living on the Cherokee Reservation, providing further evidence of the context in which Defendant continuously assaulted her.  A forensic interviewer also testified about interviewing Rebecca after her disclosure, a recording of which was submitted into evidence and published to the jury.  The jury heard additional testimony from a pediatrician who examined Rebecca and determined "her characteristics were consistent with a child

who had experienced sexual abuse."

This additional, overwhelming evidence provides ample basis for the jury to have returned guilty verdicts even if Rule 404(b) evidence had been excluded. As such, we cannot say the jury probably would have returned a different verdict had the challenged testimony been excluded. Accordingly, we hold the trial court did not commit error, much less plain error, in admitting Sarinna's testimony.

### 3. *Rule 403*

If the requirements of Rule 404(b) are met, the trial court must "'balance the danger of unfair prejudice against the probative value of the evidence, pursuant to Rule 403.'" *State v. Carpenter,* 361 N.C. 382, 388–89, 646 S.E.2d 105, 110 (2007). Rule 403 states in part that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]" N.C. R. Evid. 403 (2023). Evidence probative of the State's case "will have a prejudicial effect on the defendant; the question is one of degree." *State v. Cagle*, 346 N.C. 497, 506, 488 S.E.2d 535, 542 (1997) (citation and internal marks omitted). Unfair prejudice, in the Rule 403 context, "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, as an emotional one." *Id.* (cleaned up).

We review a "trial court's Rule 403 determination for an abuse of discretion." *Jones*, 288 N.C. App. at 179, 884 S.E.2d at 788 (citation and internal marks omitted). An abuse of discretion occurs when "the [trial] court's ruling is manifestly

unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Robinson*, 383 N.C. 512, 521, 881 S.E.2d 260, 266 (2022) (citation and internal marks omitted). But, "[w]hether to exclude evidence under Rule 403 is a matter left to the sound discretion of the trial court." *State v. Coffey*, 326 N.C. 268, 281, 389 S.E.2d 48, 56 (1990) (citation omitted).

Here, "a review of the record reveals that the trial court was aware of the potential danger of unfair prejudice to [D]efendant and was careful to give a proper limiting instruction to the jury." *Beckelheimer*, 366 N.C. at 133, 726 S.E.2d at 160 (quoting *State v. Hipps*, 348 N.C. 377, 406, 501 S.E.2d 625, 642 (1998) (internal marks omitted)). Like in *Beckelheimer*, the trial court also reviewed Sarinna's testimony during voir dire, heard opposing arguments from counsel and questioned counsel about the evidence, and provided its reasoning for denying Defendant's motion in limine. 366 N.C. at 133, 726 S.E.2d at 160. Having done so, the trial court's decision was the result of balancing the potential of unfair prejudice against the probative value of the evidence and is therefore not an abuse of discretion.

Accordingly, we hold the trial court did not abuse its discretion in admitting the contested 404(b) evidence. Consequently, Defendant has failed to carry his burden in showing plain error occurred at trial and is therefore not entitled to a new trial on this issue.

**B. Prosecutor's Statements**

Next, Defendant contends the trial court committed reversible error by failing

to intervene *ex mero motu* during the closing arguments whenever the prosecutor urged the jury to "walk in Rebecca's shoes." Specifically, Defendant argues these statements inflamed the passion of the jury to the point of prejudice.

Defendant concedes he did not object to these statements, so our review addresses "whether the remarks were so grossly improper that the trial court committed reversible error by failing to intervene *ex mero motu*." *State v. Huey*, 370 N.C. 174, 179, 804 S.E.2d 464, 469 (2017) (quoting *State v. Jones*, 355 N.C. 117, 133, 558 S.E.2d 97, 107 (2002)). This standard requires us to engage in a two-step analysis and address whether: (1) "the argument was improper; and, if so, (2) whether the argument was so grossly improper as to impede the defendant's right to a fair trial." *Id*. In doing so, we remain cognizant that our State gives prosecutors "wide latitude in the scope of their argument and may argue to the jury the law, the facts in evidence, and all reasonable inferences drawn therefrom." *State v. Phillips*, 365 N.C. 103, 135, 711 S.E.2d 122, 145 (2011) (citations and internal marks omitted). It is, however, improper for a prosecutor to become "abusive, inject their personal experiences, express their personal belief as to the truth or falsity of the evidence or as to the guilt or innocence of the defendant." *State v. Hembree*, 368 N.C. 2, 18, 770 S.E.2d 77, 88 (2015) (cleaned up).

A defendant is prejudiced by improper statements only if there is "extreme impropriety on the part of the prosecutor[.]" *Huey*, 370 N.C. at 180, 804 S.E.2d at 470 (citations and internal marks omitted). To determine if the statements rise to this

high level, we look at "whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id*. (cleaned up). Like the plain error standard, if we determine there was overwhelming evidence against a defendant, we will not reverse the judgment entered upon a duly given jury verdict. *Id*. at 181, 804 S.E.2d at 470.

At the first step, whether the prosecutor's statements were improper, we have binding precedent compelling the conclusion that they were. In *State v. McCollum*, the prosecutor asked jurors to imagine the juvenile victim was their child numerous times. 334 N.C. 208, 224, 433 S.E.2d 144, 152 (1993). When addressing whether these statements were improper, our Supreme Court stated "[a]n argument asking the jurors to put themselves in place of the victim[] will not be condoned[.]" *Id*. (citations internal marks omitted)); *see also State v. Prevatte*, 356 N.C. 178, 244, 570 S.E.2d 440, 476 (2002) ("Arguments that ask the jurors to place themselves in the victim's shoes are improper." (citing *McCollum*, 334 N.C. at 224, 433 S.E.2d at 152)). The Court then held the statements did not prejudice the defendant because of the overwhelming evidence presented against him. *McCollum*, 334 N.C. at 224–25, 433 S.E.2d at 152–53.

Here, the record reflects the prosecutor asked jurors to place themselves in Rebecca's shoes throughout the closing argument. We conclude these statements were improper. *Prevatte*, 356 N.C. at 244, 570 S.E.2d at 476; *McCollum*, 334 N.C. at 224, 433 S.E.2d at 152. Although improper, they did not rise to the level of extreme

impropriety to so infect "the trial with unfairness as to make the resulting conviction a denial of due process." *Huey*, 370 N.C. at 180, 804 S.E.2d at 470 (citations and internal marks omitted). For the reasons stated above in our analysis of the contested Rule 404(b) evidence, there was overwhelming evidence of Defendant's guilt. As such, we will not reverse the judgment entered upon the jury's unanimous verdicts finding Defendant guilty.

Accordingly, while the prosecutor's statements asking the jury to "walk in Rebecca's shoes" were improper, they did not prejudice Defendant to the level necessary to warrant a new trial.

## C. Delay in Signing Appeal

Defendant argues the trial court's nineteen-month delay in signing his appellate entries violated his Sixth Amendment right to a speedy trial.

"We review alleged violations of constitutional rights de novo." *State v. Neal*, 280 N.C. App. 101, 112, 866 S.E.2d 311, 319 (2021) (citing *State v. Graham*, 200 N.C. App. 204, 214, 683 S.E.2d 437, 444 (2009)). An "undue delay in processing an appeal *may* rise to the level of a due process violation." *State v. Hammonds*, 141 N.C. App. 152, 164, 541 S.E.2d 166, 176 (2000) (citations and internal marks omitted). The Sixth Amendment states that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]" U.S. Const. amend VI. The right to speedy appeals in state criminal proceedings are not guaranteed under the Sixth Amendment or any other provision of the Constitution; they are a product of statute.

*See State v. Berryman*, 360 N.C. 209, 213–14, 624 S.E.2d 350, 354–55 (2006) (collecting cases standing for the proposition that criminal appeals are provided for by state authority). Where a state has adopted an appellate process, the procedures "must comport with the demands of the Due Process and Equal Protection Clauses of the [United States] Constitution." *Id.* at 213, 624 S.E.2d at 354 (quoting *Evitts v. Lucey*, 469 U.S. 387, 393 (1985)) (internal marks omitted).

Our State has adopted the four-factor test set forth in *Barker v. Wingo*, 407 U.S 514 (1972), "to address issues concerning whether an individual's rights to an appeal were violated." *Berryman*, 360 N.C. at 218, 624 S.E.2d at 357. The *Barker* factors require analysis of: "'(1) the length of the delay, (2) the reason for the delay. (3) the defendant's assertion of the right to a speedy [appeal], and (4) prejudice resulting from the delay.'" *State v. Webster*, 337 N.C. 674, 678, 447 S.E.2d 349, 351 (1994) (quoting *State v. Willis*, 332 N.C. 151, 164, 420 S.E.2d 158, 163 (1992)). The first factor, the length of delay, also acts as a trigger for analysis of the latter three factors—if the length of delay is not presumptively prejudicial, then there is no need to analyze the remaining factors. *Doggett v. U.S.*, 505 U.S. 647, 651–52 (1992); *see also State v. Kivett*, 321 N.C. 404, 410, 364 S.E.2d 404, 408 (1988) ("'This Court has held that a delay of twenty-two months is not of great significance but is merely the 'triggering mechanism' that precipitates the speedy trial issue.'" (quoting *State v. Jones*, 310 N.C. 716, 721, 314 S.E.2d 529, 533 (1984))).

After determining presumptive prejudice exists, none of the factors are

dispositive and we analyze each as part of a "difficult and sensitive balancing process below." *State v. Spinks*, 277 N.C. App. 554, 562, 860 S.E.2d 306, 315 (2021) (citation and internal marks omitted).

## 1. *Length of Delay*

Our Courts have consistently held delays exceeding one year to be presumptively prejudicial; thus triggering analysis of the remaining *Barker* factors. *State v. Spivey*, 357 N.C. 114, 119, 579 S.E.2d 251, 255 (2003). *See Webster*, 337 N.C. at 679, 447 S.E.2d at 351 ("While not enough in itself to conclude that a constitutional speedy trial violation has occurred, this delay [of sixteen months] is clearly enough to cause concern and to trigger examination of the other factors."). Here, the nineteen-month delay exceeds the threshold of one year as well as the sixteen-month delay triggering analysis in *Webster*. Being so, we hold the delay was presumptively prejudicial and proceed with the rest of the analysis.

## 2. *Reason for the Delay*

A "defendant has the burden of showing that the delay was caused by the *neglect* or *willfulness* of the prosecution." *Spivey*, 357 N.C. at 119, 579 S.E.2d at 255. This "proscription is against purposeful or oppressive delays and those which the prosecution could have avoided by reasonable effort." *Hammonds*, 141 N.C. App. at 160, 541 S.E.2d at 173 (citing *State v. Johnson*, 275 N.C. 264, 273, 167 S.E.2d 274, 280 (1969)). Here, Defendant argues delay resulted from the trial court's intentional failure to sign the required documents. The record, however, is not clear that this

was an intentional act of the trial court judge.

The judge presiding over Defendant's trial retired approximately one year and five months after Defendant entered his notice of appeal, but did not take any action on Defendant's filings. The Senior Resident Superior Court Judge then entered an order on 20 March 2024, around one month after the presiding judge's retirement, finding as fact that the presiding judge refused to rule on this matter. Without more, we cannot consider this the sort of "deliberate delay" which weighs heavily against the government. *Barker*, 407 U.S. at 531. Instead, as the focus of this factor is on the State's conduct in the prosecutorial capacity, we conclude this is more akin to neutral reasons, like negligence or overcrowding, which should be weighed less heavily. *Id.*; *see also Neal*, 280 N.C. App. at 113, 866 S.E.2d at 319 ("Even if none of the delay is attributable to [the] defendant, that does not necessarily make the delay attributable to the State.").

### 3. *Assertion of Right*

"A defendant's assertion of his speedy appeal right 'is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right.'" *Neal*, 280 N.C. App. at 113, 866 S.E.2d at 319 (quoting *Hammonds*, 141 N.C. App. at 162, 541 S.E.2d at 174). In contrast, failure to assert this right weighs against him. *Id.* (citation omitted).

Here, "[D]efendant's silence is deafening." *State v. China*, 150 N.C. App. 469, 474, 564 S.E.2d 64, 68 (2002). The record reflects a lack of effort on Defendant's part

in asserting his right. The Clerk of Court did forward the appellate documents to the presiding judge a second time, but the record does not show that this action was taken at Defendant's request. Moreover, the "special letter" Defendant sent to the presiding judge, which Defendant argues amounts to assertion of his rights, was sent contemporaneously with his affidavit of indigency as part of the initial appeal filing. Instead of filing his appeal and then doing nothing, Defendant could have "contacted his attorney, the trial court, or the Clerk of Court to determine the status of his appeal at any time between the time he gave notice of appeal" and when the Senior Resident Superior Court Judge entered her order while signing the filings. *Id.*

Despite Defendant's contention that he "had no additional duty under these circumstances to move his appeal forward[,]" his acquiescence in the delay weighs against him. *See id.* at 474–75, 564 S.E.2d at 68 ("[The d]efendant's failure to stay informed concerning the status of his appeal of right and to assert his rights weighs heavily against his contention that his due process rights were violated."); *Neal*, 280 N.C. App. at 113, 866 S.E.2d at 319–20 ("Nothing in the record before us indicates that [the d]efendant asserted his right to a speedy appeal prior to his brief on appeal."); *Berryman*, 360 N.C. at 221, 624 S.E.2d at 359 (holding that despite the record including "a letter, a written request, and an affidavit drafted by defense counsel which document [the] defendant's assertions of his right to an appeal[,]" the factor weighed against him because "[n]one of defense counsel's efforts were directed to the State, to the trial court, to the clerk of superior court or to the clerk of the Court

of Appeals[]”).

### 4. *Prejudice*

The same factors we use when addressing prejudice resulting from an alleged violation of the right to a speedy trial are applicable here: (1) preventing oppressive pretrial incarceration; (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired. *Berryman*, 360 N.C. at 222, 624 S.E.2d at 359. We do not presume that a delay necessarily results in prejudice to a defendant; the defendant shoulders this burden as well. *Neal*, 280 N.C. App. at 114, 866 S.E.2d at 320 (citing *State v. Hughes*, 54 N.C. App. 117, 120, 282 S.E.2d 504, 506 (1981)).

As we do not find merit in Defendant's other arguments on appeal, his concern about post-judgment but pre-appeal incarceration is frivolous. *Berryman*, 360 N.C. at 212, 624 S.E.2d 353 (“The Court of Appeals' majority opinion held that [the] defendant's assignments of error aside from his right to a timely appeal were without merit. Accordingly, the first interest or concern cited above, prevention of oppressive pretrial incarceration, is not applicable to the case at bar.”).

Similarly, Defendant states in his brief that “the factors of anxiety and uncertainty are present for anyone whose case remains on appeal.” We agree, but that is insufficient. *See China*, 150 N.C. App. at 475, 564 S.E.2d at 69 (“Defendant has failed to show that he suffered any more anxiety than any other appellant.”); *see also Berryman*, 360 N.C. at 222, 624 S.E.2d at 359–60 (“We agree with the Court of

Appeals' majority opinion that a review of the record does not divulge any evidence to support [the] defendant's allegation of experiencing 'maximum anxiety.'").

Lastly, Defendant does not argue his appeal was hampered in any way by the presiding judge's failure to sign his appellate entries. *See id.* at 223, 624 S.E.2d at 360 ("[A]lthough a defendant's failure to assert his right to a speedy trial earlier in the process does not preclude the argument later, such failure is considered when determining whether the defendant was prejudiced."). He only argues his "case presents a serious issue about a remedy for a vindictive or capricious trial judge." The record contains no facts supporting these accusations. Moreover, in contradiction of Defendant's argument, the United States Supreme Court made apparent in *Barker* that the remedy for a violation of the right to a speedy trial, the standards for which have been adapted for an alleged violation of the right to a speedy appeal, is the "unsatisfactorily severe remedy of dismissal[.]" *Barker*, 407 U.S. at 522.

In sum, the above analysis does not weigh in favor of the unsatisfactorily severe remedy of dismissal. Accordingly, Defendant's argument that his Due Process and Equal Protection rights were violated is meritless.

### III.    Conclusion

For the aforementioned reasons, we hold the trial court did not commit plain error by admitting Rule 404(b) evidence of Defendant's prior bad acts. We also hold Defendant was not prejudiced by the prosector's improper remarks during trial or by the trial court's failure to sign his appellant entries.

NO ERROR.

Judge ZACHARY concurs.

Judge ARROWOOD concurs in result only.